UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>   vs.<br><br>DONNA GARNETTE,<br><br>                  Defendant. | CR. 21-50078-02-JLV<br><br>ORDER |

## INTRODUCTION

Defendant Donna Garnette entered into a plea agreement to plead guilty to the charge of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(C). See Docket 128. A change of plea and detention hearing was held by Magistrate Judge Daneta Wollmann on December 8, 2021. After the hearing, Judge Wollmann filed a written detention order. (Docket 177). She found "[n]o exceptional circumstances exist which would warrant [Ms. Garnette's] release" pending sentencing. Id. at p. 2. Ms. Garnette filed a motion for reconsideration of the detention order. (Docket 181). The government opposes the motion. (Docket 187).

## LEGAL STANDARD

The mandatory detention provisions of the Bail Reform Act require that any person found guilty of "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)" be detained unless:

(A)
- (i) The judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
- (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. §§ 3142(f)(1)(C) & 3143(a)(2). A violation of the Controlled Substances Act of the type to which Ms. Garnette entered a plea of guilty carries a maximum term of imprisonment of not more than 20 years. 21 U.S.C. § 841(b)(1)(C).

Notwithstanding the Bail Reform Act's mandatory detention provisions, the court may still release a defendant pending sentencing pursuant to 18 U.S.C. § 3145(c). To qualify for release under section 3145(c), a defendant must show by clear and convincing evidence she is not likely to flee or pose a danger to the community and that there are exceptional reasons why detention would not be appropriate. 18 U.S.C. §§ 3145(c) & 3143(a)(1). "Exceptional reasons must include something that is clearly out of the ordinary, uncommon, or rare." United States v. Hinman, CR. 19-50041, 2020 WL 3970187, at *1 (D.S.D., July 14, 2020) (internal quotation omitted); see also United States v. Larue, 478 F.3d 924, 925-26 (8th Cir. 2007).

## ANALYSIS

In support of her motion for release pending sentencing, Ms. Garnette begins by reminding the court that the magistrate judge initially determined she

was neither a flight risk nor a danger to the community and granted her pretrial release. (Docket 181 at p. 2; see also Docket 61). Ms. Garnette argues "[n]othing has happened in the interim that would suggest [she] has since become a flight risk or a danger." (Docket 181 at p. 2). Additionally, Ms. Garnette points to the fact that as recently as November 12, 2021, pretrial services continued to recommend she remain on pretrial release. Id. at p. 2; see also Docket 152. She argues these facts are sufficient to meet her burden of establishing by clear and convincing evidence that she is neither a flight risk nor a danger to the community.

Next, Ms. Garnette argues her pregnancy constitutes an exceptional reason why detention pending sentencing is not appropriate in her case. See Docket 181 at pp. 2-7. The child's birth is predicted in May 2022. Ms. Garnette contends her pregnancy alone is an exceptional reason sufficient for the court to grant her release, but she also asserts the heightened risks for pregnant individuals brought about by the COVID-19 pandemic "only serve to reinforce [her] position." Id. at pp. 5-6. Ms. Garnette advises the court she was unable to find any case law within the Eighth Circuit that specifically analyzes whether pregnancy is an exceptional reason as contemplated by section 3145(c). Id. at p. 4. However, she cites to several cases out of the Western District of North Carolina which support the position pregnancy may constitute an exceptional reason to grant a defendant release pending sentencing. See id. at

3

pp. 4-5. She notes all of "these . . . cases held that pregnancy was an exceptional [reason] before the pandemic." Id. at p. 5.

Finally, Ms. Garnette identifies specific conditions of her incarceration negatively impacting her pregnancy and which she argues may ultimately adversely impact the health of her unborn child. See id. at pp. 6-7. She indicates it is painful and sleep depriving to sleep on the thin mattress she is provided at the jail and that she is experiencing mental and emotion distress navigating a pregnancy in that environment. Id. at p. 6.

The government resists Ms. Garnette's motion for release pending sentencing. See Docket 187. The government notes that Ms. Garnette violated the terms of her pretrial release on September 9, 2021, when she was stopped in a vehicle with her co-defendant Kelly Grass, with whom she was prohibited from having contact during the pendency of this case. Id. at p. 1. Mr. Grass is the father of her unborn child. Id. at p. 2. The government notes, however, that Ms. Garnette "reported her contact [with Mr. Grass] to pretrial services," and pretrial services "did not file a petition to revoke her pretrial release status." Id.

The government confirms it will be recommending a prison sentence for Ms. Garnette within the statutory limits. Id. at pp. 2-3. The government argues the "burden and hardship [Ms.] Garnette has caused to her child[ren] and[/]or family[] are 'nothing more than the all too common effects of criminal behavior.' " Id. at p. 4 (quoting United States v. Green, 250 F. Supp. 2d 1145, 1151 (E.D. Mo. 2003)). The government believes the reasons Ms. Garnette has

4

cited as grounds for her motion are nothing more than the type of " 'personal reasons' " the court has determined in previous cases "are not extraordinary reasons warranting release." Id. at p. 4 (quoting United States v. Tobacco, 150 F. Supp. 3d 1051, 1054 (D.S.D. 2015)). The government requests the court affirm the magistrate judge's order of detention. Id. at p. 4.

After reviewing the record, the court finds Ms. Garnette is neither a flight risk nor a danger to the community if released pending sentencing. After Ms. Garnette was arrested in May 2021, pretrial services recommended she be granted pretrial release. (Docket 45). The magistrate judge entered an order setting the conditions of her release on May 26, 2021. (Docket 61). Although, as the government points out in its memorandum in opposition to Ms. Garnette's motion, Ms. Garnette violated the conditions of her release in September 2021 when she traveled in a vehicle with her co-defendant, Mr. Grass, she reported the violation to pretrial services and pretrial services did not file a petition to revoke her pretrial release status. See Docket 187 at p. 2. As recently as November 2021, pretrial services continued to recommend Ms. Garnette remain on release, albeit with additional conditions. (Docket 152). Ms. Garnette has significant ties to the District—specifically, to Rapid City and the Pine Ridge Reservation, where she has lived for the majority of her life and where much of her family continues to reside. See Docket 45. Mr. Grass has been in custody since his bond was revoked in October 2021. He has entered a plea and is set for sentencing in April 2022. See Dockets 118 & 169. At this point, Ms. Garnette

is approximately five months pregnant. She was generally compliant with the conditions of her pretrial release, with the exception of the contact with Mr. Grass discussed above. Pretrial services has continued to recommend she remain on release while her case is pending. The court finds nothing additional in the record to support a position contrary to the one taken by pretrial services or that is otherwise of note to its analysis of the issue here. The court finds Ms. Garnette has met her burden of showing by clear and convincing evidence she is neither a flight risk nor a danger to the community if released pending sentencing.

The remaining issue is whether Ms. Garnette has presented exceptional reasons why presentence detention is not appropriate in her case. The court has previously found that "[p]ersonal reasons, such as caring for family members, being gainfully employed, and caring for young children with unique health problems are not extraordinary reasons." Tobacco, 150 F. Supp. 3d at 1054. The court is not persuaded by the government's contention that Ms. Garnette's pregnancy during a global pandemic is merely another personal reason akin to the others listed by the court previously that do not rise to the level of extraordinary. While pregnancy is not a rare condition in general, it is a relatively uncommon condition experienced by individuals facing incarceration. For individuals facing presentence detention, the challenges presented by, for example, the need to ensure "car[e] for young children with unique health problems" are different than the challenges presented by pregnancy. Id.

6

Although the circumstance may certainly give rise to new and significant challenges for those involved, young children can be placed in the care of others while the individual is in custody.[1]   A pregnant individual's child in utero cannot.

A growing body of research indicates stress experienced by individuals during pregnancy can significantly and detrimentally impact the individual's own health, as well as the pre- and postnatal health and development of the child.  See, e.g., Mary E. Coussons-Read, *Effects of prenatal stress on pregnancy and human development: mechanisms and pathways*, OBSTETRIC MEDICINE (2013), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5052760/; Michael T. Kinsella & Catherine Monk, *Impact of maternal stress, depression and anxiety on fetal neurobehavioral development*, CLINICAL OBSTETRICS & GYNECOLOGY (2009), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3710585/.  Ms. Garnette indicates she is experiencing physical pain and discomfort as well as heightened mental and emotional distress due to the combination of the conditions of her current incarceration at the jail and her pregnancy.  See Docket 181 at p. 6.  The very real possibility exists that Ms. Garnette's physical, mental and emotional state arising out of her conditions of confinement in jail will negatively impact her unborn child's health and development, both before and after the baby is born.

---

[1] In fact, that is precisely the situation for Ms. Garnette's eldest child, who is three years old and is currently in the care of another family member.  See Docket 45 at p. 2.

Additionally, the Centers for Disease Control and Prevention recognizes pregnant people are at increased risk for severe illness from COVID-19.  See *Pregnant and Recently Pregnant People*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/pregnant-people.html (last updated Dec. 17, 2021).  "People who have COVID-19 during pregnancy are also at increased risk for preterm birth . . . and stillbirth and might be at increased risk for other pregnancy complications."  Id.  And certain other factors, such as living or working in places where it is not possible to adequately socially distance or being a member of racial or ethnic groups that traditionally face health inequities, can also increase an individual's risk of severe illness from COVID-19.  Id.

Based on regular communications with the U.S. Marshals, the court is aware there are numerous active COVID-19 cases at the jail where Ms. Garnette is currently detained.  Her pregnancy, the inability to socially distance in her current environment and the fact she is a Native American woman—a demographic which traditionally faces health inequities—all put her at increased risk of severe illness should she contract the virus in the next several months before she gives birth.  A case of COVID-19 in the coming months for Ms. Garnette, especially if severe, would put her unborn child at heightened risk for preterm birth and even stillbirth.

The court finds Ms. Garnette's pregnancy constitutes an extraordinary reason why detention pending sentencing is not appropriate in her case.  That

finding is further reinforced by the additional challenges discussed above arising out of the ongoing COVID-19 pandemic, the risks COVID-19 presents to pregnant individuals and their children in utero and the inherent aspects of jail settings that make managing the spread of the virus difficult even if the facility implements precautionary measures.

Based on the above analysis, it is

ORDERED that defendant Donna Garnette's motion for review of the magistrate judge's detention order and for release pending sentencing (Docket 181) is granted.

IT IS FURTHER ORDERED that Ms. Garnette shall be released on the same conditions of her pretrial release.

Dated January 25, 2022.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE